GEORGE ATKINSON *v.* WILLIAM BROOKS.

*Rights of an indorsee of negotiable paper indorsed to him as collateral security for a pre-existing debt.*

The indorsee of a bill of exchange as collateral security for a pre-existing debt is, *prima facie*, a holder for value, and so entitled to recover against an accommodation acceptor, not known to him to be such when the bill was taken by him.

ASSUMPSIT upon a bill of exchange.

Plea, *non assumpsit*, and trial by jury.

On the trial, the plaintiff read in evidence the bill declared on, of which the following is a copy, viz:

Atkinson *v.* Brooks.

" Dolls. $1574,97.  Bradford, July 25, 1851.

" Three months after date, I pay to the order of myself, at " Bank in Boston, Fifteen hundred and seventy-four dollars ninety-" seven cents, value received, and charge the same to account of " your obt. servant."  (Signed,)  " Asa Low."

" To William Brooks, Esq., }
" Sherbrook, C. E."  }

The defendant admitted the signature of the drawer, acceptor and indorser, but objected to its being received in evidence on account of a variance; the court overruled the objection; to which the defendant excepted.

The said bill was accepted by the defendant, and indorsed in blank by the said Asa Low.

It was admitted, that the plaintiff was the cashier of the State Bank, in Boston, and that this suit was brought in his name for collection merely, for the firm of George Lawton & Co., of said Boston, who are the plaintiffs in interest in the suit. That the bill was left by said Lawton & Co. in said bank for collection, and was duly protested, for non payment.

The plaintiff offered testimony tending to prove, that said bill was passed, and delivered by said Low, in September, 1851, to the firm of Joshua Norton, Jr. & Co., a firm of merchants in Boston; that said Low was indebted to said firm of Norton & Co., and that said Norton & Co, received the said bill to be applied in part extinguishment of Low's indebtedness; that about the 12th or 13th of October, 1851, the said firm of Norton & Co. transferred and delivered the said bill, to said Lawton & Co., in payment for a note of about $1,100, held by Lawton & Co. against said Norton & Co., which was then due, and had been protested for *non payment;* that said note was not given up at the time, for the reason that the same was in the Bank at Brighton, but that the same was considered as paid; and that Lawton & Co. executed some obligation, or receipt to Norton & Co. to account to them for the balance of said bill when collected of the acceptor, or drawer.

The plaintiff's evidence also tended to prove, that said Lawton & Co. received said bill *bona fide,* and without notice of any defect in the title of Norton & Co. to said bill.

The defendant then offered evidence tending to prove, that after

said bill had been accepted by him, and after the same had passed out of the hands of said Asa Low, the letter "I" between the words date and pay, in said bill was not there when accepted by him, or indorsed by said Low, but had been inserted since, without the knowledge or consent of defendant or said Low.

The defendant also offered testimony tending to prove, that said bill was not passed, or delivered by said Low, to Norton & Co., to be applied on his account, or upon any dealings between them; but that the same was left by said Low with said Norton & Co. for the purpose of raising money upon it in the market for said Low, and that said Norton & Co., at the time of receiving said bill of said Low, agreed to obtain the money upon it, and send it to him at Bradford, Vt., or return the bill to him in a few days.

The defendant's evidence tended also to prove, that when said Lawton & Co. received said bill of said Norton & Co., the same was not received in payment or extinguishment of their note against Norton & Co.; but was received by them merely as *collateral security* to be applied in payment of said note if collected; but that the said Lawton & Co. retained their note as a subsisting security against said Norton & Co.

The court,—POLAND, J., presiding,—charged the jury, that the alleged alteration of said bill by the insertion of the letter "I" was not an alteration that changed the legal effect of the instrument, and would not release the parties to it, from their liability thereon if done without their consent. To this part of the charge defendant excepted.

The court also, (among other things not excepted to,) charged the jury that, if they found that Norton & Co., received said bill of Low, in the manner and for the purposes claimed by the defendant only, and so that Norton & Co. had no right to recover upon it, still if they found that Lawton & Co. took it in good faith while current, and without any notice of any defect in the title of Norton & Co., in payment and satisfaction of their note against Norton & Co., and with an agreement to pay the balance to Norton & Co., then plaintiff would be entitled to recover to the amount of their note given up, but not the full amount of the bill. The jury were also charged, that if they found that Lawton & Co. received said bill of Norton & Co. as *collateral security* for the payment of their note merely, and that Lawton & Co. still continued

to hold said note as a subsisting and valid debt against Norton & Co., then Lawton & Co. acquired no better title to the bill, nor any better title to recover than Norton & Co.

· To the charge of the court as above detailed, the plaintiff excepted.

The following amendment to the exceptions, was allowed subsequent to the filing of the same, viz : That it was also proved by the plaintiff, that at the time Lawton & Co. received said bill of Norton & Co., in October, 1851, Norton & Co. owed Lawton & Co. two other notes, one for $2,428, which fell due in January, 1850, and one for $1,234,83, which fell due the March following, and that said notes are still unpaid.

It also appeared, that Norton & Co. failed in January, 1852, and soon after went into insolvency under the laws of Massachusetts, and that no dividend has yet been paid on their debts.

The jury returned a verdict for defendant. The plaintiff filed a motion to set aside the verdict for the reason, that a juryman had disclosed the verdict after it was sealed up and before it was delivered in court. The motion was overruled by the court.

*J. H. & H. F. Prentiss* for plaintiff.

1. The insertion of the letter I was not a *material* alteration of the bill, and therefore in no way changes its legal effect, or the liability of the parties.

2. The most recent and best authorities in England and in this country establish the doctrine, that a *bona fide* holder, taking a negotiable instrument in payment of, or *as security for*, a pre-existing debt, is a holder for a valuable consideration, and entitled to protection against all the equities between the antecedent parties. *Swift* v. *Tryon*, 1 Amer. Lead. Cas. 332, and cases there cited. *Chickopee Bank* v. *Chapin*, 8 Metcalf 40. *Blanchard et al.*, v. *Stevens*, 3 Cush. 162, and cases there cited. Story on Promissory Notes 215.

The forbearance of Lawton & Co. *to collect the note* against Norton & Co., is as good a consideration for the draft as though it had been received in *payment* of the note.

What difference should it make with the defendant whether the bill was passed in *payment* or as *security* for the debt?

By accepting the bill he acknowledged funds of the drawer in

his hands equal to the amount of the acceptance, and it is *immaterial who* collects the draft, whether he be a *bona fide* holder or not. The drawer indorsed the bill and put it in circulation and it is a matter between him and his indorsee what use was made of the bill. There, is where the accountability rests ; and if the drawer has trusted his paper in "villainous hands," it is his own fault, and we, who have taken it in good faith, should not be sufferers thereby. A man, who throws his paper into market, does it at his own risk. He makes it negotiable, and puts it in circulation, and he must take the chances of trade. His mistake should not be visited upon the head of an innocent holder.

The cases of *Sawyer* v. *Cutting et al.*, 23 Vt. 486, and *Keyes & wife* v. *Wood et al.*, 21 Vt. 331, though not strictly analogous to this case, are authorities in favor of the plaintiff.

3. Plaintiff is entitled to recover the full amount of the draft. The case shows, that at the time Lawton & Co. received the draft, Norton & Co. were, and still are largely indebted to them on other notes besides the $1,100, note. And at the time they received the draft, they executed to Norton & Co. an accountable receipt for the balance of said draft over and above the $1,100, note, which balance Lawton & Co. had a right to understand should be applied on their other notes against Norton & Co., and it should be so treated. *Bosanquet* v. *Dadman*, 1 Starkie R. 1. 8 Ves. 531. 4 Bing. 496. 1 Bing. New Cases 469. *Percival* v. *Frampton*, 2 Cromp. Mees. & Ras. 180. *Sawyer* v. *Cutting et al.*, 23 Vt. 486.

4. As to the motion to set aside the verdict and for a new trial, the counsel cited, *Warner* v. *Carpenter,* 1 Tyler 250, *Suffolk Bank* v. *Austin et al.*, Windsor County Court, November Term, 1838, COLLAMER, J., presiding ; and *Forbes et al.* v. *Davidson*, Orleans County, in about 1838.

*Peck & Colby* for defendant.

If the holder of a promissory note hold it as *collateral security* merely, the maker when sued upon it, may have the same defense to it, that he could have availed himself of, if the suit had been brought in the name and for the benefit of the original payee. *Sargent* v. *Sargent et al.*, 18 Vt. 371. Notes to 1 Amer. Lead. Cas. 336, and cases cited.

If the defendant proves that the note or bill was fraudulent in its

inception, or fraudulently put in circulation the burden of proof will be thrown upon the plaintiff to show that he is a *bona fide* holder for value. 3 Kent's Com. 412. *Monroe* v. *Cooper*, 5 Pick. 79. *Heath* v. *Lawson*, 22 E. C. L. 78. *Solomons* v. *Bank of England*, 13 East. 136. 10 Johns. 231.

The refusal of the county court to set aside the verdict and grant a new trial was *matter of discretion*, and is not the subject of error. A writ of error will not lie for the awarding or refusing a new trial. *Richards et al.* v. *Wheeler*, 2 Aik. 369. 6 East. 333. 2 Tidd's Practice 1056. 5 Cranch. 11, 87. 6 Cranch. 206. 1 Peter's Con. 260, Note of cases. 1 Peters C. C. R. 159.

The opinion of the court was delivered by

REDFIELD Ch. J. This case, as the defendant's testimony tended to prove, and as the jury seem to have found, in giving a verdict for defendant, was a bill of exchange, drawn by one Asa Low, at Bradford, Vermont, upon the defendant at Sherbrook, Canada East, payable to the order of the drawer, at the bank in Boston, Mass., three months from date, and being accepted and indorsed, was deposited with a firm of merchants in Boston, to raise money for Low, and remit to him at Bradford. But they, before its maturity, passed it to one of their creditors as *security* for a note of some eleven hundred dollars, which they were owing them at the time, and which was overdue. The bill being dishonored was duly protested, and is sued in the plaintiff's name, for the benefit of the house to whom it was passed, as security for their note. The defendant is merely an accommodation acceptor.

The important question in the case is, whether the plantiffs in interest, can be regarded as holders for value. No question was made but that they took the bill in good faith, and without knowledge, even of the defendant being merely an accommodation acceptor, or of any confidence between the parties of whom they took the bill, and any prior party. The inquiry seems naturally to resolve itself into two leading questions:

1. Did the plaintiff, in fact, and upon principle, give value for the bill, and can he, upon this ground merely, be justly regarded as a *bona fide* holder for value? It seems now to be pretty generally conceded, that one who takes a note or bill indorsed while current, in payment and extinguishment of a pre-existing debt,

Atkinson *v.* Brooks.

must be regarded as a holder for value. This is certainly the general course of decision upon the subject, with some exceptions to be sure, and we do not well see how it can fairly be argued that one who gives up a debt, and accepts a note or bill for the same, either on time or at sight, can be said to give- no consideration for the same. He certainly does forego .the pursuit of his own debt, and thus certainly puts himself, for the time, in a different, and in law, a worse situation. And this must be regarded as *prima facie* a foregoing of some advantage by the indorsee, and also an accommodation to the indorser, who may fairly be presumed to prefer this mode of meeting his debt. The transaction, therefore, possesses both the cardinal ingredients which constitute the text-book definition of a valuable consideration; it is a detriment to the promisee, and an advantage to the promisor. And it is no satisfactory answer to the case, to say the party who takes such bill or note, which proves unproductive, is in the same condition he was before. This is by no means certain. He has for the time, foregone the collection of his debt, and in such matters time is the essence of the transaction. And the debtor thereby gains time—it may be more or less—but of necessity, some time is thereby gained; and in such matters, this is always accounted an advantage, and is often of the most vital consequence to the debtor. How then can it fairly be said, that this mere suspension of the debt, during the currency of the note or bill, is no consideration? It seems to me such reasoning upon other subjects, indeed upon any subject, where one is not pressed to the wall by the necessities of his case, would almost be regarded as frivolous, surely it is scarcely specious.

But it has often been claimed, that there is an essential difference in principle between taking a current note or bill in payment, and as security for a prior debt then due. The transactions are certainly different in form, at least. But it seems to me, the ordinary case of taking such a security as payment, or as collateral to the prior debt, is the same in principle. One whose debt is due, in the commercial world, must pay it instantly, or he becomes a bankrupt. If, instead of money, he gives a bill or note, either on time or at sight, whether this is in form, in payment, or collateral to his debt, he gains time, and saves the disgrace and ruin consequent upon stopping payment. And, in either case,

there is an implied undertaking that he shall wait upon his debtor, till the result of the new security can be known; and in both cases, when that proves unproductive, the creditor may pursue his original debt, or he may sue the prior parties on the new security, except his immediate indorser, and sue him upon the original debt, or he may sue him as indorser, and also all prior parties. In this state, and some other of the American states, where a note or bill, when taken as payment *prima facie*, extinguishes the debt, it is more common to sue the debtor or indorser. But according to the English law, and the general commercial law, taking a current note or bill for a prior debt, only suspends the right of action, till the dishonor of the new security. According to the general commercial usage, there is, then, no essential difference in principle, whether a current note or bill is taken in payment, or as collateral security for a prior debt, provided the note is, in both cases, truly and unqualifiedly negotiated, so as to impose upon the holder the obligation to conform to the general rules of the law merchant, in enforcing payment. If, indeed, the note or bill, is not so negotiated as to make the holder a party to it, or so as to require of him to pursue the strict rules of mercantile usage in making demand of payment, and giving notice of dishonor, so as to charge his indorser, with all the prior parties, upon the peril of making the note or bill his own, in payment of his debt, then he could not be regarded probably as having so taken the paper in the due course of business *bona fide*, and for value, as to shut out equitable defenses existing between the original parties. But ordinarily, we suppose it fair to conclude, that one who takes a note or bill negotiated to him while current, although merely as collateral to a prior debt, is expected to pursue the same course in enforcing payment, as if he paid money for the bill. And it is scarcely supposable that one so taking security for a debt, will not conduct differently on account of the security. It is of necessity he should, if he puts any confidence in its ultimate availability. And one would scarcely part with such security, unless he expected more or less indulgence on account of it. And when the prior debt is suffered to remain uncollected, it is, under the circumstances, fair to conclude, such was the stipulation. And the case of one who takes a note or bill so negotiated, whether in *payment* or in *security* of a prior debt, implicitly stipulating to

forego the collection until the maturity of the collateral paper, when such paper proves unproductive, is the same in *both alternatives*. In either case he may pursue his remedy upon the negotiable paper, against all the prior parties, including his immediate indorser, or omitting him, he may pursue the other parties to the bill or note, and sue his original debt equally, whether he took the paper in payment or as collateral security of such debt, so that the difference between the two cases is merely formal. And if, in case of negotiating current paper as collateral security for a prior debt, the holder is not regarded as having taken it upon a valuable consideration, then the indorser may recall it at will. For, if there is no such consideration as to make the contract binding, it is revocable at will.

And if not upon consideration as to one party, neither is it as to the other. And in such case, the holder is merely the agent of the indorsee for purposes of collection, and as such agent, subject to his control, and bound to surrender the security at will. This was the view taken in *De La Chaumette* v. *The Bank of England*, 9 B. & C. 208. But that case turned upon the peculiar construction given to the facts of the case. Such is certainly not the common case of taken negotiable paper, as collateral security for a debt already due. The indorser, in such case, can no more recall or control the paper, than if he had received the money or goods in payment of the same. And when one takes a bill or note negotiated before maturity, in payment of money advanced or goods sold, such paper is, in fact, only collateral security for the money, or the price of the goods, and suspends such debts only till the dishonor of the bill, and is in law precisely the same thing as if the lender of the money or the vendor of the goods took a note for the money or goods, and a bill or note negotiated as collateral to such note, with the agreement to wait till such collateral was paid or dishonored. In all these cases it would never be claimed, that the indorser of such bill or note could take it out of the hands of the indorsee at will. But this he clearly might do, if such indorsee had not taken it upon consideration. If, for instance, one holds a debt due six months hence, and his debtor, as a mere volunteer service, indorses a current note or bill as collateral security, the collateral being due in three months, it could not be made to appear that such transaction, before the indorsee had

been at any pains in the matter, was a contract upon considera-
tion. The prior debt not being due, the creditor could forego no-
thing, and the debtor receive no advantage from the transaction.
And the agreement to apply the collateral upon a debt not yet
due—being without consideration—would, probably, in the first
instance, be revocable at will, and so, also, as long as the parties
remained in the same situation. It seems needless to spend more
time to show that, upon principle, and in fact, one who having a
debt due, accepts of his debtor, a current note or bill, indorsed to
himself as collateral security for the debt, with the understanding
that indulgence is to be shown on the prior debt, which, in fact,
follows, does take such paper upon consideration, and gives value.
Upon careful examination of this matter, it seems strange that
such a question should ever have been raised; and it probably
never would have been, but from the indefiniteness of the implied
obligations growing out of such a transaction.

2. The more important question growing out of the case is,
perhaps, what is the true commercial rule established upon this
subject? And it is of vital importance in regard to commercial
usages, that they should, as far as practicable, be uniform through-
out the world. And such is necessarily the ultimate desideratum,
and will inevitably be the final result. It is, therefore, always a
question of time as to uniformity in such usages. The basis of
such uniformity is convenience and justice combined. And until
such rules become measurably settled by practice, they have to
be treated as matters of fact, to be passed upon by juries; and
when the rule acquires the quality of uniformity, and the char-
acter of general acceptance, it is then regarded as matter of law.
It is thus that most of the commercial law has from time to
time grown up. In the case of *Foster* v. *Pearson*, 1 C. M. & R.
49, Lord LYNDHURST, while Chief Baron of the Court of Ex-
chequer, left it to the jury to determine, upon the evidence as to gen-
eral commercial usage in the city of London, whether the plain-
tiff had taken the bill in the due course of business, and the full
court held that the question was properly submitted to the jury.
But in this case it seems to be recognized as settled law, that one
who takes an indorsed note or bill still current, as collateral secu-
rity for a prior debt, is a *bona fide* holder for value. So too, as early
as 1814, in *Bosanquet* v. *Dadman*, 1 Stark. 1, Lord ELLENBOR-

Atkinson *v.* Brooks.

OUGH said,—" that whenever the acceptances exceed the cash balance, the plaintiff held all the collateral bills for value;" and the Court of Exchequer, in *Percival* v. *Frampton*, 2 C. M. & R. 180, decide the same point. PARK, B., says : " If the note were given to the plaintiffs as a security for a previous debt, and they held it as such, they might be properly stated to be holders for valuable consideration." This is in 1835. And the same rule is certainly recognized in *Heywood* v. *Watson*, 4 Bing. 496. So also in *Bosanquet* v. *Foster*, 9 C. & P. 659, and *Same* v. *Corser*, ib. 664. *Palmer* v. *Richard*, is a full authority to show that it is not material whether the note or bill be deposited as *security* for an advance, or in payment, as some of the American cases seem to suppose. (1851,) 1 Eng. Law & Eq. 529 ; 15 Jur. 51.

In *Smith* v. *Braine*, 3 Eng. Law & Eq. 379, the proper distinction between accommodation paper, and paper fraudulently or illegally obtained or put in circulation is discussed, and placed upon the sensible and true ground no doubt, viz : that in the former case it is incumbent upon the maker or acceptor to show that the holder took it without consideration, the law making the ordinary presumption in favor of the holder of accommodation paper, which is, in fact made for the purpose of being put in circulation, and it being, therefore, fair to presume the holder took it for value, and *bona fide*. But in case of a note or bill, illegal in its inception, or fraudulently put in circulation, if these facts be *proved* in defense, it imposes upon the holder the necessity of proving in answer that he gave value for the paper. 15 Jurist 287. So also in *Mills* v. *Barber*, 1 M. & W. 425, it was long ago declared by Lord ABINGER, that the courts in Westminster Hall had, upon consultation, determined so to decide the law. The same distinction between accommodation paper, and paper fraudulently put in circulation, obtains in many of the American states. But this distinction is not, perhaps, very important here, inasmuch as the defendant claims both want of consideration for his acceptance, and fraud in putting the paper in circulation. *Harvey* v. *Towers*, 4 Law & Eq. 531 ; 15 Jur. 544.

But that the English law is fully settled, in favor of the indorsee of current negotiable paper, who takes it as collateral security for a prior debt, there can, I think, be no doubt, since the decision of *Poirier* v. *Morris*, 20 Law & Eq. 103 ; 22 Law Journal [N.

S.,] Q. B. 313: 2 El. & Bl. 89, May, 1853, long since the present action was pending. This was an action upon a foreign bill which was negotiated to plaintiffs as security for a previous debt, and at the time of receipt passed to the credit of the debtor. It being dishonored, was protested, and therefore, charged in account against the debtor to balance the former credit, with the addition, of expenses. This would seem to be the usual course of doing business in Europe, and probably obtained to a considerable extent in the American cities, bills and notes being credited on receipt and charged upon dishonor, and all the collaterals being thus holden for the ultimate balance. This case was decided upon the general ground of the plaintiff's title at the time he took the bill as security for the balance of his account. Lord CAMPBELL, Ch. J., in giving judgment, says: "There is nothing to make a difference between this and the common case, *where a bill is taken as security for a debt, and in that case an antecedent debt is a sufficient consideration.*" CROMPTON, J., says: "*Whether the bill was a collateral security or whether it had the effect of suspending the payment of the antecedent debt, is quite immaterial.* The plaintiffs had a perfect right to keep it." We think, therefore, it must be regarded as settled law in England at the present day, that such a bill or note taken as collateral security for a prior debt is taken in the due course of business and for value. Such being the settled rule of the English law, which is confessedly of great and paramount force upon a question of this kind, it is certainly desirable that, in regard to commercial law of such extensive application in the every day transactions of business, the law of the American states should also be uniform, and as far as reasonable and practicable, correspond with the acknowledged rule in other states and countries. The case of *Swift* v. *Tyson*, 16 Pet. U. S. Sup. Ct., upon the most elaborate examination and debate, adopts the English rule, and upon general grounds of settled commercial law. The decisions of the national tribunal are not indeed of any binding authority upon the general rules of the law merchant in a state court, further than they commend themselves to our sense of reason and justice. But such a decision as that of *Swift* v. *Tyson*, upon such a subject, could scarcely fail to be regarded as of very considerable force, and, if sound in principle, would, almost of necessity, ultimately form the basis of that uniformity of commer-

Atkinson *v.* Brooks.

cial law in these states which, sooner . or later, must from its very great convenience, ultimately prevail. If not sound in principle, it would with difficulty be maintained even by that court.

Aside from our former remarks, going, as we think, to show the soundness of the rule laid down in *Swift* v. *Tyson*, the course of decision in the several states since the date of that decision, show a general disposition to adopt it. Indeed, in many of the states a similar rule prevailed before that. In Pennsylvania, *Petrie* v. *Clark*, 11 Serg. & R. 377, [1824,] recognizes fully the sufficiency of the consideration for the indorsement of a note or bill where it is taken in payment of a prior debt, and even as *collateral security*, if there is any agreement to wait on the prior debt, or any other damage is sustained in consequence, or the indorsee waives, or temporarily foregoes any of his other rights. This ground, assumed by GIBSON, J., at that early day, is certainly a very near approach to the rule of *Swift* v. *Tyson*, and the present English rule upon the subject. The only difference seems to be, in not holding that one who takes such paper as collateral security, is presumed to conduct differently on account of it. *Walker* v. *Geisse*, 4 Wharton 252, [Penn.] maintains very much the same ground.

In Maine, *Holmes* v. *Smith*, 16 Maine 177, decides, that if such paper be taken in payment of a pre-existing debt, it defeats all equitable defenses between the original parties. So also in New Hampshire, *Williams* v. *Little*, 11 N. H. 66. The decision in this case, that such paper being indorsed as collateral security *for a loan made at the time*, is not held for value, is certainly not justified by the decisions in any other state, so far as I can find. The New York courts, who have resisted this rule with the most unflinching pertinacity, do not so hold, but the contrary. *Williams* v. *Smith*, 2 Hill 301; *Watson* v. *Cabot Bank*, 5 Sanford 423; *Carlisle* v. *Wishart*, 11 Ohio 172, adopts the view of *Holmes* v. *Smith*. *Blanchard* v. *Stevens*, 3 Cush. 162, holds the same. So, also, *Norton* v. *Waite*, 20 Maine 175. So, too, *Bostwick* v. *Dodge*, 1 Douglass [Michigan,] 413. *Bush* v. *Pechard*, 3 Harrington [Delaware,] 385, goes to the same. extent. So also the case of *Brush* v. *Scribner*, 11 Connecticut 388. In none of these cases except *Williams* v. *Little*, did the question arise, whether taking a note or bill indorsed as collateral security for a prior debt, is the same as taking it in payment. There is, therefore, every reason

to suppose that no such distinction will be attempted in any of those states, unless it be the latter state. The case of *Barney* v. *Earle*, 13 Alabama 106, is to the same extent. In *Reddisk* v. *Jones*, 6 Iredell [North Carolina,] 107, all distinction between taking negotiable paper in payment and as collateral security is repudiated, and both held to be valuable and sufficient considerations. In this case the paper was taken in payment, to be sure. So, also, in Georgia, *Gibson* v. *Conner*, 3 Kelly 47, expressly decides, that taking such paper as collateral security for a prior debt, is sufficient to shut out equitable defenses. So, also, in Indiana, *Valette* v. *Mason*, 1 Smith 89. And the same is held in New Jersey, *Allaire* v. *Hartshorn*, 1 Zabviskie 665 ; and in *Chicopee Bank* v. *Chapin*, 8 Met. 40, the same rule is recognized, although there the debt was created at the time the paper was negotiated as collateral security. Thus, we think, most of the states may be regarded as virtually having adopted the rule laid down in *Swift* v. *Tyson*. Ch. KENT, too, 3 Com. 96, and note, adopts the same rule, " as the plainer and better doctrine ;" and *Allen* v. *King*, 4 McLean C. C. 128. It is to be borne in mind, that upon the other side New York contends strenuously, that such paper, taken either in payment or as security for a prior debt, is not held upon any sufficient consideration to shut out equitable defenses. I think the New York courts are consistent and sound, in denying all distinction between taking such paper in payment and as security for a prior debt. There obviously is no difference in regard to the consideration. But, even in New York, they have felt compelled to decide, that if such paper is taken in payment of a prior debt, being indorsed *without recourse*, the holder acquires perfect title, and may shut out equitable defenses between the original parties. *Bank of St. Albans* v. *Gilliland*, 23 Wendell 311. And if one gives his own note for such paper, it makes him a holder for value even in New York. 4 Barb. S. C. 304. These two cases seem very much like an abandonment of the principle of the rule even there. In Kentucky, too, a similar rule to that in New York, has prevailed. *Breckinridge* v. *Moore*, 3 B. Monroe 629. It is claimed too, that Virginia adopts the same ground, in *Prentice* v. *Zane*, 2 Gratten 262 ; but that case does not decide the point, a new trial being awarded for defect in the special verdict. Similar decisions have been made in Tennessee. In *Wormly* v. *Lowry*, 1 Humphrey

468, GREENE, J. says: " Where one receives a note for a pre-existing debt, he parts with nothing. He is in the same situation after a successful defense by the maker, that he was before he took the note." This is certainly a remarkable instance of the *non sequitur*, to have imposed any delusion upon the mind of an experienced judge. He is in the same situation! . But how can that be made to appear ? He has let the collection of his debt or its security surcease for the time, and time is often fatal in such matters, and has incurred the expense and vexation of litigation, and is still in the same situation ! Surely he is, in one respect ; his debt is still unpaid ; and in another also, which is somewhat important, he is again out of court. And it seems to me, that all refinements upon such absurd premises are always liable to involve one in similar contradictions and incomprehensible conclusions. I certainly feel no disposition to deal harshly or in a vain-glorious spirit, with the general arguments upon which this view is attempted to be maintained. It will be found ably stated by WALWORTH, Chancellor, in *Stalker* v. *McDonald,* 6 Hill 93.

This embraces most of the decisions upon the subject, both in this country and in England. And we could scarcely question, that the decided and increasing preponderance is in favor of the plaintiff's claim to hold the bill free from all equities of the acceptor ; and coinciding as it does with our views of the reason and justice of the case, we could not hesitate to adopt it. We might, probably, have decided the case upon the Massachusetts law, as the contract seems, upon its face, to have been made with reference to that place. But as this question was not made in the court below, it does not properly arise here, probably. And we have chosen to put the case upon the general rule of the law merchant the ordinary presumption being, that the law of any particular place, in regard to commercial contracts, conforms to the general law, unless the contrary be shown. The party who claims the benefit of the law of a particular place, on the ground of it being different from the general rule of law on that subject, must prove the law of that place to be different, as he would prove any other fact in the case. This leaves that question open.

We do not understand the plaintiff to claim seriously, that he can recover the balance of this bill above the amount of the note which was due at the time of the negotiation of the bill, and

as security for which it was negotiated. We do not see how he could claim that. The valuable consideration must be limited to the amount of the prior debt, due at the time of the negotiation of the bill.

1. A note or bill negotiated in security for a debt not yet due, is not upon sufficient consideration, ordinarily, unless the creditor wait in faith of the collateral after his debt becomes due.

2. If the debtor is notoriously insolvent before the note or bill is negotiated as collateral security, it is said the creditor can only stand upon the rights of his debtor.

3. If a note or bill is taken merely to collect for the debtor, to apply when collected, the creditor not becoming a party by indorsement, so as to be bound to pursue the rules of the law merchant in making demand of payment and giving notice back, the holder is merely the agent of the owner. *De La Chaumette* v. *Bank of England, supra. Allen* v. *King,* 4 McLean C. C. 128.

4. So, too, probably, if it were shown positively that the holder gave no credit to the indorsed bill, and did, in no sense, conduct differently on that account, he could not be regarded as a holder for value.

These four exceptions are probably based upon good sense, and may be found sustained by authority, but we have no occasion to say more in regard to them here. This case stands upon the general broad ground, of paper taken in the due course of business as collateral security for a debt due, and *prima facie,* the holder is under such circumstances to be regarded as holding the paper for a valuable consideration, and so entitled to recover against an accommodation acceptor.

Judgment reversed.