## GUSTAVUS A. AUSTIN *v.* CURTIS & WALKER.

*Collateral security. Principal and surety.*

No binding agreement to delay the collection of an overdue debt is implied from the receipt by the creditor from the principal debtor of a note, or other obligation, not yet due, *merely as collateral security* therefor; and, therefore, the mere receipt of such collateral security will not have the effect to discharge a surety or indorser, upon the original debt. The cases of *Atkinson* v. *Brooks*, 26 Vt. 569, and *Michigan State Bank* v. *Estate of Leavenworth*, 28 Vt. 209, overruled, so far as they conflict with this principle.

But *aliter*, it seems, if the creditor accept such obligation for and on account of the original debt. BENNETT, J.

By taking such an obligation as *collateral security* merely, the creditor doubtless furnishes ground for an *expected indulgence* on the original debt, but the debtor is bound to treat this as at all times countermandable at the will of the creditor. BENNETT, J.

*Quere*, whether the holder of negotiable paper, to whom it has been transferred merely as collateral security for a pre-existing debt, is a holder for value, or not, under the law merchant.

GENERAL ASSUMPSIT, in which the plaintiff sought to recover upon a promissory note for two hundred dollars, dated June 13, 1853, signed by John Bradley, payable to the order of John Smith in three months after date, and indorsed by Smith and the defendants. Plea, the general issue, and trial by the court, at the March Term, 1857, — PECK, J., presiding, — upon the following agreed statement of facts : — The defendants, as partners, indorsed the note, above described for the accommodation of the maker, John Bradley, for whom the plaintiff, knowing their relation to the note, discounted it. It was not paid at maturity, and the indorsers were duly charged thereon. After its maturity, the plaintiff, without the defendants' knowledge, accepted from John Bradley his note for four thousand seven hundred and eighty-six dollars and fifteen cents, indorsed by Harry Bradley, and having four months to run, as collateral security for the note indorsed by the defendants, and other claims of the plaintiff against John Bradley, the whole of which, including the note in suit, was equal to the note so accepted as collateral security. This note was not paid at maturity, and the indorser Harry Bradley was duly charged thereon, but he had then become, and ever since has remained, wholly insolvent, and no part of the note has ever been paid.

Upon these facts the county court rendered judgment for the defendants, to which the plaintiff excepted.

*William W. Peck,* for the plaintiff.

The defence rests on the cases of *Atkinson* v. *Brooks,* 26 Vt. 569, and *Michigan State Bank* v. *Estate of Leavenworth,* 28 Vt. 209. In each of these cases the decision of this point was not only unnecessary to the disposition of the case, but also erroneous and unsustained by the authorities.

The true principle is, that collateral security is *incidental* merely, and therefore leaves the rights and remedies upon the principal debt unaffected, unless the receipt of the security be accompanied with an express agreement to forbear the collection of the debt, based upon a valuable consideration. 2 Kent's Com. 111–12; Story on Cont. sec. 870; *Drake* v. *Mitchell,* 3 East,

251 ; *Pring* v. *Clarkson*, 1 B. & C. 14 ; *Twopenny* v. *Young*, 3 B. & C. 308 ; *Gering* v. *Edwards*, 6 Bing. 94 ; *Wade* v. *Stanton*, 5 Howard (Miss.) 631 ; *Burke* v. *Cruger*, 8 Texas 66 ; *United States* v. *Hodge*, 6 How. U. S. 279 ; *Liggett* v. *Bank of Pennsylvania*, 7 Serg. & Rawle 218 ; *Norton* v. *Eastman*, 4 Greenl. 521 ; *Hare* v. *Alexander*, 2 Met. 157 ; *Weakly* v. *Bell*, 9 Watts 273 ; *Jones* v. *Johnson*, 3 Watts & Serg. 276 ; *Day* v. *Leal*, 14 Johns. 404 ; *Suckley* v. *Furse*, 15 Johns. 338 ; *Gahn* v. *Niemcewiez*, 11 Wend. 312 ; *Elwood* v. *Deifendorf*, 5 Barb. 399 ; *Ripley* v. *Greenleaf*, 2 Vt. 129.

*Hard & French*, for the defendants, upon the question of the discharge of the defendants by the receipt of collateral security, cited *Atkinson* v. *Brooks*, 26 Vt. 569 ; *Mich. State Bank* v. *Est. of Leavenworth*, 28 Vt. 209 ; *Okie* v. *Spencer*, 2 Am. Lead. Cas. 170, and cases there cited ; *Myers* v. *Wells*, 5 Hill 463 ; *Fellows* v. *Prentiss*, 3 Denio 512 ; *Gould* v. *Robson*, 8 East 576 ; *Steadman* v. *Gooch*, 1 Esp. 14 ; *Kendrick* v. *Lomax*, 2 Cromp. & Jer. 405 ; *Baker* v. *Walker*, 14 M. & W. 463 ; Chitty on Bills (11 Am. Ed.) 409–411.

They also contended that the declaration being simply the common counts in assumpsit could not be supported against the defendants because they were merely accommodation indorsers, and on this point cited *Johnson* v. *Catlin*, 27 Vt. 87 ; *Sanford* v. *Norton*, 14 Vt. 232 ; *Page's Admr.* v. *Bank of Alexandria*, 7 Wheat. 35 ; *Wells* v. *Girling*, 8 Taunt. 737.

BENNETT, J.   This case, having been argued a second time, before all the judges, at the General Term, it becomes my duty to express the opinion of a majority of the court.   The case comes up upon an agreed statement of facts.   The defendants were accommodation indorsers of a note from one John Bradley, and the plaintiff, knowing such to be the fact, discounted the note for Bradley, and when the note matured, the necessary steps were taken to charge all parties on the paper.   After this, the plaintiff accepted the note of John Bradley, bearing date the 1st of May, 1854, payable on time, to the order of Harry Bradley, and by him indorsed as *collateral security* for the note now in

Austin *v.* Curtis et al.

suit, and for other debts due from John Bradley to the plaintiff, and this was done without the knowlege or consent of the defendants. The necessary steps were taken to charge Harry Bradley on the note indorsed by him, when the same became due ; but he was at that time wholly insolvent and has not at any time since had any attachable property, and no part of the money could be collected of him for that reason. Before the present suit was brought, both Harry Bradley and the maker of the note were requested to pay it, but did not.

The court, on the facts stated in the case and agreed upon by the parties, gave judgment for the defendants. It is well settled that if the facts agreed upon have established an agreement to give time, *obligatory* upon the plaintiffs, and by means of which his right of action on the note indorsed by the defendants has been *suspended*, the defendants are thereby discharged, it appearing that they were but accommodation indorsers, and that this was known to the plaintiff when he took the note ; but if such an agreement were not made, the mere fact of giving time would not release the sureties ; mere delay, unaccompanied with a binding contract for that purpose, can have no such effect. It must be an agreement, which ties up the hands of the creditor and deprives him of the right of sueing the principal, and thereby prevents the surety from coming into a court of equity for relief. See *Orme* v. *Young*, Holt's N. P. Cases 84, cited in 15 Johns. 435, *n. a.* But this is a principle too well settled to need authority. The question then in this case is, whether there was any giving of time by the plaintiff in consideration of the additional security, which had the effect to defeat or suspend his right of sueing the principal.

It may be admitted for the purposes of the present decision, (and I have no disposition to question the proposition) that the existence of the antecedent debt, due the plaintiff, was a valid consideration for the transfer of the additional security, and that it was in no way competent for the principal to withdraw it at any time at will from the plaintiff, treating the transaction simply as a pledge, and as not involving a promise to give further time by means of the receipt of the additional security. It is said by CAMPBELL, Ch. J., in the case of *Poirier* v. *Morris*, 20 Eng.

Law and Equity 103, "that where a bill or note is taken as a security, *the antecedent-debt* is a sufficient consideration." This, I apprehend, is no new doctrine. See *Bolton* v. *Fuller*, 1 B. & P. 539 ; *Collins* v. *Martin*, 1 B. & P. 684 ; *Jervis* v. *Rogers*, 13 Mass. 105 ; 15 Mass. 389. But it is not sufficient to discharge the surety, that there should be simply a valid consideration for the pledge ; there must also be a promise to give time, founded upon such a consideration. This case is entirely destitute of any evidence of a promise to give time, unless such promise is to be inferred, as matter of fact, or of law, from the reception of the additional security for the antecedent debt. There is no pretence in this case that the new paper was taken *for and on account of* the old debt, but the case finds that it was taken *merely as collateral security for its payment.* This new security does not represent the debt itself, but is a different and a distinct demand, the payment of which the creditor may enforce if he can ; but we apprehend it can have no direct operation upon his relations to the principal debtor, unless it be paid, and in this way result in the satisfaction of the antecedent debt. The case does not show that a single word was said between the creditor and the principal debtor, in respect to giving time of payment on the antecedent debt, and we apprehend no agreement is to be implied from the force of the transaction itself to that effect. In *Pring* v. *Clarkson*, 1 Barnwell & Creswell 14, it was expressly held, that the taking of a new bill, *payable on time*, as *collateral* security for an antecedent debt, did not amount to the giving of time to the acceptor of the first bill, so as to discharge a person standing in the light of a surety on that bill. ABBOTT, Ch. J., in that case says, "in no case has it been held that the taking a *collateral security* from the acceptor shall have the effect of giving time on the first bill." So in *Ripley* v. *Greenleaf*, 2 Vt. 129, the principle of the case of *Pring* v. *Clarkson* seems to have been fully adopted by our own court. They there held that taking a new note on time, *as security* for an antecedent debt was no discharge of an accommodation indorser on the first note, unless there was *a contract* suspending the right of action on such note, of which there was no proof in that case. We apprehend the case of *Pring* v. *Clarkson*, followed, as we think it was, in the case of

*Ripley* v. *Greenleaf*, is sound law. The case of *Twopenny* v. *Young*, 3 Barn. & Creswell 208, is in point. In that case the defendant signed a joint and several promissory note, payable on demand, with one Rumming, for the debt of the latter. A bill of sale under seal was taken from the principal, to secure this debt and others, and the bill of sale contained a proviso, that it should not be enforced until after three days notice to the principal debtor. It was claimed this discharged the surety, but it was held that the acceptance of the bill of sale had not the effect to give time to the principal debtor, that it was intended only as a further security for the note, that the note continued an existing security, and that the plaintiff might at any time have sued the note notwithstanding the deed, *there being no agreement not to sue the note* until after the expiration of the three days notice.

In *Emes* v. *Widowson*, 4 C. & P 151, the suit was by the drawer of two bills of exchange against the acceptor, and the defence set up was an arrangement between the parties by which the defendant had by deed assigned certain property to the plaintiff to secure the debts in suit, as well as other debts. The deed of assignment contained a power of sale, yet it provided that the power of sale should not be executed *until after six months notice*. The court held that the deed of assignment was only *collateral security*, and that the personal remedy on the bills was not suspended, there being no provision in the deed of assignment that it should have that effect.

The case of *Gahn* v. *Niemcewiez*, 11 Wend. 312, is so much in point, that I may be permitted to draw rather freely from the very able opinion of Justice NELSON : " It is well settled," says that learned jurist, " that merely taking a new security from the debtor, *without agreeing to give time*, will not discharge the surety;" (page 320 and cases there cited). The learned judge after citing several cases to sustain him in the foregoing proposition, and among them the case of *Pring* v. *Clarkson*, proceeds to say : " the time when the new security becomes due does not vary the effect and operation of it upon the old, as abundantly appears from the above cases. All of them became due, or. could not have been enforced until some time after they were taken, *but this circumstance implied no agreement to postpone the remedy on the old secu-*

*rity.* These cases all turned upon the point that no agree-
ment had been made to forbear, in consideration of the new
security at the time it was received, and that the mere receipt of
it *did not imply one,*" page 321, 322. So in *Day* v. *Leal,* 14
Johnson 404, it was fully held, that the taking of a *collateral
security*, though of a higher nature, whether from the principal
debtor, or a stranger, does not preclude the creditor from sueing
at any time upon the first contract, and consequently does not
discharge the surety upon it, though the new security is on time.
See also *Bank of Utica* v. *Ives,* 17 Wend. 501. So in *Elwood*
v. *Deifendorf,* 5 Barb. 409, it was again declared to be the settled
doctrine, from the authorities, "that the taking a mere secu-
rity from the principal debtor for an old debt past due, *payable
at a future time without an agreement to extend the time of pay-
ment* does not discharge the surety."

That eminent jurist, Chancellor Kent, in his commentaries
lecture 44, vol. 3, p. 111–112, declares the law to be "that sim-
ply forbearing to sue the acceptor, *or taking collateral security
from him,* will not discharge the other parties to the bill, but if
a new credit and time is given him, it will produce that result."

In the case of the *United States* v. *Hodge and Pearce,* 6 How.
U. S Rep. 279, an action was brought against the sureties on a
bond given to secure the faithful performance of the duties of a
postmaster. The postmaster was in arrears to the government,
and he executed a mortgage to the United States of real and per-
sonal estate to secure the payment of such sum not exceeding
sixty-five thousand dollars, as should be found due from him on
settlement, the payment to be made after *the expiration of six months
from the giving of the mortgage.* The court held, that though the
mortgage could not be enforced until after six months from its
date, yet its acceptance by the government had no effect on the
liability of the sureties on the bond, inasmuch as it was a *collat-
eral security.*

The court say in express terms, " that there being no provision
in the mortgage, that it should suspend the legal remedy on the
bond, it can not be successfully maintained, that taking collateral
security merely, can suspend such remedy."

The court in substance add, that to discharge a surety, the giv-

ing of time *must act upon the instrument indorsed by him*, and that no suspension of the remedy on the bond *can be implied* for the time limited in the collateral security for the payment of the sum found due.

The court rely upon the cases of *James* v. *Badger*, 1 Johnson's Cases 131 ; *Kennedy* v. *Motte*, 3 McCord 13 ; *Hurd* v. *Little*, 12 Mass. 502, and *Ruggles* v. *Potter*, 8 Mass. 480, as establishing the position that the holder of a bill of exchange, by taking a *collateral security* of the drawer, payable on time, does not thereby release the indorser, on the ground that the right of action has been suspended on the original paper. This case, having been decided by the highest judicial tribunal in the nation, would seem to be entitled to very considerable respect.

In *Weakly* v. *Bell & Stearling*, 9 Watts 280, the case of *Pring* v. *Clarkson* was fully adopted, as sound law. The Pennsylvania court in that case fully held that taking a new note payable on time, *as collateral security* for an antecedent debt, would not release an indorser on the first note without an agreement by the holder to give time.

We have been referred to the two well considered cases from the supreme court of Mississippi of *Wade* v. *Staunton*, 5 Howard (Mississippi,) 631, and *Newell & Pierce*, v. *Haynier*, in which the case of *Pring* v. *Clarkson* is most fully adopted. So the case of *Wallace* v. *Agry*, 4 Mason 336, fully sustains the case of *Pring* v. *Clarkson*. *Burke* v. *Conger*, 8 Texas 66, does no discredit to the judiciary of that state. That court fully adopt the case of *Gahn* v. *Niemcewiez*, 11 Wend. 321, and the reasoning of Judge NELSON, as well as his deductions from the adjudged cases, and hold that the mere receipt of a *collateral security*, payable at a future day, to secure the payment of an antecedent debt, does not imply an agreement to give time, so as to affect the remedy as to the principal debt. The cases of *Sigourney* v. *Witherell*, 6 Metcalf 564, and *Norton* v. *Eastman*, 4 Greenl. 521, are to the same effect. See also, Story on Promissory Notes 416, 485 ; Chitty on Bills, 12 Amer. Edition, (marginal paging) 409 412 ; Bayley on Bills 369. Chitty in his text adopts the case of *Pring* v. *Clarkson*, without disapprobation.

And Bayley lays down the doctrine in these words : " taking

a fresh bill from the acceptor as a *collateral security* will not discharge the drawer, unless there be a bargain to give time;" and Byles on Bills, p. 196, (margin) says : " though the taking of a fresh bill from the acceptor, in lieu of the dishonored bill, discharges the other parties, it will not have that effect, if the second bill or the second security, whatever it be, was given as a *collateral security."* When a negotiable note is indorsed as *collateral security* for an antecedent debt, the general property remains in the indorser, and the indorsee holds it as a pledge to secure a debt due from the payee to himself, and he takes the legal title in trust, and if the money due on the security is collected, the indorsee must account for the money according to the trust. *Jenness* v. *Bean,* 10 N. H. 266 ; *Williams* v. *Little,* 11 N. H. 66.

As the question involved in this case is important, not only to the present suitors, but also as a matter of law to govern future cases, affecting past as well as future transactions of business men to a very considerable extent, it may be well to consider somewhat at length the cases which have been relied upon as establishing a different doctrine, and among them, the case of *Okie* v. *Spencer,* 2 Wheaton 253, may well be considered a leading case. That case establishes the position, that if the holder of a promissory note on the day it falls due accepts from the maker a check, dated six months in advance, and drawn by a firm of which the maker of the note was a member, upon a bank, *which check is to be in full satisfaction of the note, if the check is paid at maturity,* in such case the remedy against the maker on the note is thereby suspended, and an accommodation indorser discharged. We are not disposed to question the soundness of that decision. It is only with the reasoning of Judge KENNEDY that we are at issue. His argument goes upon the ground that this was a case where the check was received as *collateral security,* when, in fact, it was a case of *conditional payment ;* and in this all the difference lies. In *Kearslake* v. *Morgan,* 5 Term 513, and in other cases of the like kind, it was held, in an action for goods sold and delivered, that a plea that the defendant, who was the payee of a certain negotiable promissory note, indorsed it to the plaintiff " *for and on account of the said*

*debt*," was good on demurrer. This must have been upon the ground that it operated as a *conditional payment*, and if there was any thing in the case to defeat the effect of this conditional payment, it must come out in the replication. *Clark* v. *Young*, 1 Cranch 181, is also a case of conditional payment. Treating the acceptance of the bank check, in the case of *Okie* v. *Spencer*, as a *conditional* payment, it is clear that it should suspend the right of action upon the original debt, until something had transpired to defeat the effect of such a payment. It is true, Judge KENNEDY, in giving the reasons for the decision in that case, does place himself in conflict with *Pring* v. *Clarkson*, but I apprehend purely from unfortunately confounding cases of *conditional payment* with cases where the new paper was taken as a *pledge* or *collateral security*. The case of *Okie* v. *Spencer* was decided only four years before the case of *Weakly* v. *Bell et al.*, 9 Watts, and the opinion of the court was given in both cases by the same learned judge. The latter case is one where it was settled by the jury, that the new paper was taken as *collateral security*, and Judge KENNEDY adopts the case of *Pring* v. *Clarkson* as sound law, and his opinion mainly rests upon that case. No allusion is made to the previous case of *Okie* v. *Spencer*, by the judge; but his reasoning in the two cases seems to be inconsistent, although the cases themselves do not conflict in my view.

The case of *Gould* v. *Robson*, 8 East 576, is not put upon the ground that the holder took a new bill from the acceptor as *collateral security*, but that he did something more. He agreed to *keep the original bill until the other was paid*, (or rather became due). This was in effect treated by the court as an agreement that the original bill should not in the meantime be enforced. Such it was said was the effect of the agreement, and it was held that thereby time was given. That case, being put upon that special ground, is not opposed to *Pring* v. *Clarkson*, but it rather professes to recognize the doctrine of that case.

It has been sometimes questioned whether the court did not go too far in holding that an agreement to keep the original bill till the other became due, was in effect *an agreement not to enforce it in the meantime*, but as the case was put upon that special ground, it is no authority to sustain the proposition, that the mere recep-

tion of a collateral security, payable on time, for an antecedent debt, *implies* an agreement to give time. The case of *Kendrick* v. *Lomax*, 2 Crompton & Jervis 405, I can not view as in the least opposed to *Pring* v. *Clarkson.* In that case, *before* the first bill had been dishonored,· the second bill was received *for and on account* of, and *in renewal of the first bill*, and the action had been brought on the first bill before the second had matured. It was well said by Bayley, B., " that the plaintiff virtually undertook not to sue on the first, until the second bill was delivered up." It would, indeed, be strange if it were otherwise. The very expression used, that the second bill was received in *renewal* of the first, *ex vi termini*, implied that the second bill was to take the place of the first, and must of course imply an extension of time on the first bill. The case of *Myers* v. *Wells & Magee*, 5 Hill 463, belongs to an entirely different class of cases from the one at bar. The defendants " were accommodation indorsers upon a note made payable in six months. The maker pledged this note with the plaintiff and his partner, as collateral security for such goods as the firm should sell him, and for such acceptances as they should make for him from time to time, the firm knowing at the time the relation in which the defendants stood to the maker. Some six months after the collateral note had, by its terms, matured, the firm and the maker of the note made a settlement for the goods which had been previously sold, and for acceptances which they had before that time made for the makers, and on the settlement the maker gave the firm his negotiable note, payable on time, for the balance due them. We have no doubt that in that case by the taking of the note of the maker on time for the balance found due, the firm did *suspend* a right of action against the maker on the original consideration until the notes matured. It was something more than a mere gratuitous promise to give time on the old debt. The giving the notes operated as a liquidation of the claim of the firm, and subjected the principal to new and peculiar liabilities, and gave to the firm fresh and additional rights, to be derived from negotiating the new paper, which they had taken, if occasion should require. All these ingredients constituted a new and valuable consideration for giving a new credit to the maker of the note. The giving of further time to

Austin *v.* Curtis et al.

the maker for the payment of the sum found due from him did not operate alone upon that debt, but it must also have operated to suspend the right of action on the note pledged as collateral security for the original debt. The rights of the firm upon the collateral note must have followed any arrangement, which in any way affected the remedy for the debt, which the collateral note was designed to secure.

The case of *Fellows* v. *Prentiss*, 3 Denio 512, in principle, is like the last named case. The surety had *guaranteed* the payment of such goods (not exceeding a given amount) as the plaintiffs might sell upon a credit of one year to a third person. After the expiration of the term of credit, the creditor accepted the principal's note for the balance due, payable on time, and the effect of this was to discharge the guarantor. This is but the common case, where the creditor accepts on the debt of the prinpal his promissory note on time, and thereby extends the time of payment on the original debt, and it must of course discharge a surety.

In the case cited by the defendants' counsel of *Steadman* v. *Gooch*, 1 Espinasse 3, Lord KENYON says: it is clear law " that if the creditor is content to take a bill or note payable at a future day, for his debt, he can not sue on the original debt, until such note or bill becomes due." This is too well established as the general rule to be questioned.

The case of *Baker* v. *Walker*, 14 Mees. & Welsby 465, relied upon by the defendants' counsel, maintains only the same doctrine. It was simply held in that case, that a note taken by a judgment creditor of a judgment debtor, for the amount of his judgment, and payable on time, was a *valid* note. The *consideration*, it is there said, was the agreement which the transaction implied, to suspend proceedings on the judgment till the note matured, and this is no doubt well settled law, and the cases are numerous to sustain the principle of that case.

As I understand the cases, there is a class of securities, payable on time, the taking of which on an antecedent debt *implies* an agreement for the suspension of the antecedent debt, but that class of cases is confined to those where the creditor accepts the note or bill *for and on account of the antecedent debt*, and the new

security, for the time being at least, *is to take the place of and represent the original debt*. That class is distinguishable from, and not to be confounded with the class where the creditor has accepted simply a *new additional or collateral security* for an antecedent debt. In the former transaction, an agreement to give time may be *implied*, but not out of the latter transaction. There the new security is held only as a pledge, leaving the creditor with the right to enforce the old security whenever he shall see fit to withdraw any expected indulgence to the principal, and at the same time leaving to the surety the right of coming into a court of equity at any time for relief.

If it should be said that the distinction between the two classes of cases is shadowy, and fine spun, (and even if this should be admitted,) it will not in my view justify the court in disregarding the distinction, and confounding the cases. If the authorities maintain this distinction, as we think they do, it should be binding upon us. We sit here to *declare* the law, *not to make it*. But I apprehend the distinction in the cases is well taken, and that while an agreement to give time *may be implied* in the case where the new security takes the place of, and stands, for the time being, in lieu of the old security, yet, if the new security is but additional and *collateral* to the old, I think it may well be said that the fact of taking the new security on time does not prove a *promise* to give time, but doubtless may furnish ground for an *expected indulgence* which the principal debtor is bound to treat as being at all times countermandable at the will of the creditor. I am fully aware that the views here expressed are somewhat at variance with the reasoning of the Chief Justice in the case of *Atkinson* v. *Brooks*, 26 Vt. 569. That case is evidently put in part upon the ground (and perhaps it may be an indispensable ground of the decision) that the taking of the note as a *collateral security* for the old debt *implied* a binding promise to extend the time of payment, but it is not necessary now to inquire whether such a view is indispensable to sustain that case or not. If the paper in that case had, while current, been negotiated to a *bona fide holder* for value, in the due course of commercial business, the equities between the original parties would be cut off. Whether the *antecedent debt* in that case was a sufficient

consideration, within the law merchant, (the paper being taken as collateral,) to cut off all equities between the original parties, without an agreement to give time, is not a question now before the court.

The case of *Poirier* v. *Norris* in 20 Eng. L. & Eq. R. would seem to proceed upon the ground that the negotiation of the paper was within the law merchant, although the taking of the new security did not extend the time of payment on the antecedent debt. The case of the *Michigan State Bank* v. *Estate of Leavenworth*, 28 Vt. 214, which soon followed the case of *Atkinson* v. *Brooks*, is but a legitimate corrollary from the reasoning of the Chief Justice in that case, and all the members of the present court, with the exception of the Chief Justice, think that the reasoning of the court in those cases, in the particular now under consideration, is unsound and opposed to authority. Although such has been my conviction, yet I have hesitated much in respect to what was my duty and that of a majority of the court to do under existing circumstances, and I may add that I am somewhat peculiarly situated, to be made the organ of the court in this case, having been a member of the court at the time those decisions were made. It is perhaps due to myself to say that at the argument I did not concur in the ground assumed by the learned Chief Justice in the case of *Atkinson* v. *Brooks*, still I did not feel disposed to enter a dissent on the record, and when we came to the case in 28 Vermont, I deemed the ground assumed in that case to be a legitimate deduction from the ground assumed by the Chief Justice in his reasoning in the case of *Atkinson* v. *Brooks*. Whether the case in the 28 Vermont might not have been fairly put upon the ground assumed by Isham, J., in his opinion, to wit : that the bills were not drawn by Roelofson, Hatch & Co., within the authority of the letter of credit, so as to bind the estate of Leavenworth upon his guaranty, is a point not now before us. I may be permitted to say that the reasoning of the learned judge seems to have great weight.

I have already remarked that I feel somewhat delicately situated in being made the organ of the court in this case, for the reasons suggested, and have hesitated as to the result to which I should come, yet my brethren, who constitute a majority of the

whole court, are decidedly of the opinion that the judgment of the county court should be reversed. It is of vital importance that the law, as far as practicable, should be definitely settled, and rigidly adhered to, and old rules should not be shaken, or abandoned, nor established precedents neglected in favor of new theories of jurisprudence, and of the introduction of doctrines, not in accordance with adjudged cases. To change a rule of law, which has become a rule of property by a judicial decision, is always attended with the most injurious consequences. It does not simply act prospectively, as would a change of the rule by the act of the legislature, but it acts also upon past transactions. It has been frequently said with great propriety, that courts should not reverse a judgment contrary to many precedents long established. When a principle has once been settled, it is well that it should stand, even though we might think it founded in error. And still it must be admitted that a *new precedent*, affecting property, unfulfilled contracts and existing instruments, and changing an established rule of law, or of evidence, by which they are to be governed, should not prove an insurmountable barrier to restoring what is to be regarded as the *old rule.* We apprehend that until the very recent opinions to the contrary, it was understood by business men and the profession generally, that simply taking additional collateral security, on time, for the payment of an antecedent debt, did not of itself have the effect to discharge previous sureties on the same debt, and that the enunciation of a different principle was received with some little surprise. We have no doubt that many contracts unfulfilled at the present time, and many existing instruments, have been made and entered into for the purpose of obtaining *additional* security without the least thought that it was to prejudice the creditor's remedy against previous sureties. And, on the whole, the majority of the court think that under existing circumstances it is the duty of the court to restore what they regard the *old rule,* which was fully recognized in the case in the 2 Vermont. By so doing, this court do not, in their view, impose upon the old sureties any new obligations which they were not before under, but leave them to stand where they were, preserving to the creditor his old rights, and precluding the surety from setting up his discharge under

what this court, as now constituted, esteem a *new rule* of law.

The defendant has made a point in his argument, that if the plaintiff is entitled to recover, still he can not recover upon this general declaration. It is sufficient to say that no such point was relied upon below, and if the objection were sound, which the court are not to be understood as admitting, it could have been obviated by an amendment of the declaration on trial. The decision of the county court is upon the broad question, that upon the facts stated in the agreed case, the plaintiff had no right to recover against these defendants.

The result must be that the judgment of the county court is reversed, but instead of entering judgment now for the plaintiff, the cause is remanded, upon the defendants' application for liberty to withdraw their agreed statement of facts.

