## Case No. 8,947.
### The MAGGIE JONES.
[1 Flip. 635;[1] 5 Cent. Law J. 263.]

District Court, E. D. Michigan. March 12, 1877.

PRACTICE IN ADMIRALTY—AMENDMENT—COLLATERAL SECURITY—STAY—DISCHARGE OF SURETY.

1. If a libel is amended by adding a co-libellant, this does not discharge the surety on the stipulation.
[Cited in U. S. v. Mosely, 8 Fed. 691.]

2. After commencement of suit and seizure and bonding of the vessel libellants took notes and mortgages of the owners, payable at different times within six months, as collateral security: held, that this did not operate to arrest or stay the suit, nor was the surety discharged.
[Cited in The Theodore Perry, Case No. 13,-879.

Libel for towage by the tug E. M. Peck, which boat libellants owned. John P. Clark, the respondent, was surety upon the stipulation to answer judgment. The original libel was filed in one name only and the stipulation of surety was given to answer this libel, and "to abide the result of said cause." After seizure of the schooner libellants received from the owner of the schooner promissory notes covering the claim as, also, other claims against her, the payment of which was secured by a mortgage upon the schooner. The notes and mortgage were given as collateral security only for the claims and not in payment or extinguishment, it being understood that the lien upon the schooner should re-

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

main in full force. The draft which was the basis of the libel was not surrendered. Respondent knew nothing of this last transaction. The first note was paid, the others were not. In May, 1875, the schooner was seized under the mortgage but was released with the knowledge of, and without objection from, respondent. At the same time a bill of sale of the schooner was made to respondent to secure him, amongst other things, against this liability on the stipulation, and the schooner went into his possession. The stipulation of respondent covered other claims besides this; he had paid all decrees against him in all cases against the schooner except this one; had been subrogated to the rights of these libellants, and had an execution issued under which the schooner was seized. The bill of sale was given to effect her release, as well as upon that under the mortgage. The seizure under the execution was prior to the seizure under the mortgage. The vessel in twenty days thereafter was libelled in Buffalo and sold, and respondent lost all security he might have had under his bill of sale.

E. E. Kane, for libellant.
H. C. Wisner, for respondent.

BROWN, District Judge. After the stipulation in this case was filed, the libel was amended by adding the name of Bradley as co-libellant, he having been part owner of the tug at the time the services were performed. It is insisted that this discharged the surety upon the stipulation. This position is untenable. I regard it as settled by the case of Newell v. Norton, 3 Wall. [70 U. S.] 257, that the undertaking of the surety is practically co-extensive with the liability of the vessel in that particular action, and subject to any amendment which the court has power to make. This power is, however, so far limited that the name of one sole libellant can not be changed for that of another, however the cause of action might remain unchanged, as where a mistake had been made in the name of the owner of a tug. The Detroit [Case No. 3,832]. Still more clearly would the amendment be beyond the power of the court, where a new cause of action was introduced. It was upon this ground that it was held by the supreme court of this state, in Evers v. Sager, 28 Mich. 47, that the sureties upon the appeal were discharged. Regarding this, the court observe (page 52): "If the court had possessed the power to order or allow such an amendment, irrespective of the stipulations of the parties, the sureties would have been bound by its action, because their obligations must be understood as contemplating a possible exercise of such power." See, also, The Harmony [Case No. 6,081]. The addition of a new party, or indeed any other amendment which the court has power to make in the original action, has usually been held not to affect the undertaking of a surety. King v. Holland, 4 Term R. 457; Merrick v. Greely, 10 Mo. 106; Miller v. Clark, 8 Pick. 412; Ball v. Claflin, 5 Pick. 306; Seeley v. Brown, 14 Pick. 177. In the case of Fullerton v. Campbell, 25 Pa. St. 345, where additional plaintiffs were added after an appeal by defendant from an award of arbitrators, and a scire facias was sued out on the recognizance, reciting a suit in the names of the plaintiff, including those added after the appeal, it was held fatal to a recovery. This was an action of trespass vi et armis at common law, and it may be well said that the surety, while responding for the trespass of one, might not have been willing to answer for that of three. The particular character of the trespass does not appear in the report, and hence it is impossible to say whether the cause of action was in fact changed by the amendment; if it were a mere correction of a mistake (as in the present case the failure to name all the owners of the tug), the case is in conflict with a great weight of authority; if it were practically the introduction of a new cause of action, it is inconsistent with none of the cases above cited. In the light of these opinions. I do not regard it as controlling the determination of the question of the case under consideration.

Were the question an original one, I should feel strongly inclined to hold that the taking of the notes and mortgage of the owner of the vessel, even as collateral security, operated to extend the time for payment of the claim; but I find the rule to be too well settled the other way to be now disturbed. There is a distinction taken in the books, between the cases where the notes are received as conditional payment and those where they are taken as collateral security. In the former, the note clearly operates as an extension of time for the payment of the original debt; in the latter, it is regarded as strictly collateral, as much so as if the security were taken upon the property of a third party, and for an entirely different consideration. The leading case upon this point is that of U. S. v. Hodge, 5 How. [46 U. S.] 282, which was an action brought against the sureties on a bond given to secure the faithful performance of the duties of paymaster. The paymaster, being in arrears, executed a mortgage to the United States, of real and personal estate, to secure the payment of such sum, not exceeding $65,000, as should be found due him on settlement, the payment to be made after the expiration of six months from the giving of the mortgage. The court held that though the mortgage could not be enforced until after six months from its date, yet its acceptance by the government had no effect upon the liability of the sureties upon the bond, inasmuch as it was a collateral security; that, there being no provision in the mortgage that it should suspend the legal remedy on the bond, it could not be successfully contended that it could have this effect;

that, to discharge a surety, the giving of time must act upon the instrument indorsed by him, and that no suspension of remedy upon the bond can be implied from the time limited in the collateral security for the payment of the sum found due.

All the earlier authorities upon this point are reviewed and criticised in the case of Austin v. Curtis, 31 Vt. 64, in which, in a very elaborate opinion, the court held, overruling two prior cases in the same state, that no agreement to delay the collection of an overdue debt is implied from a receipt by the creditor from the principal debtor of a note or other obligation not yet due, merely as collateral therefor. Pring v. Clarkson, 1 Barn. & C. 14; Twopenny v. Young, 3 Barn. & C. 208; Elwood v. Deifendorf, 5 Barb. 405; Day v. Leal, 14 Johns. 404; Emes v. Widdowson, 4 Car. & P. 151.

While, without explanation, I should be strongly inclined to hold, in view of the ordinary course of business upon the lakes, that the taking of a note for a claim of this kind was conditional payment, I am precluded from that conclusion here by the express terms of the stipulation. As the taking of these notes then did not suspend the prosecution of the original suit, and as the mere failure to press the suit with expedition can not be pleaded by the surety in discharge of his obligation, it results that this defense can not be sustained. Irrespective of this, it is at least doubtful whether the taking of a bill of sale after the vessel had been seized upon this mortgage, to secure him for signing the stipulation, would not be such a ratification of the extension as to continue the liability of the surety. A decree will be entered for the libellants for the amount of their claim and interest.