BANK OF THE REPUBLIC *v.* EDWARD CARRINGTON & others.

A promissory note indorsed over as collateral security for a preëxisting debt, if received by the creditor before the maturity of the collateral note and without notice, is indorsed for value, in the usual course of business, and may be held by the creditor discharged of the equities between the original parties.

ASSUMPSIT against the defendants as the makers of a promissory note for $4,200, dated March 10, 1853, and payable six months after date, to Livingston, Wells & Co. or order, and by them indorsed to the plaintiffs.

At the trial of the case before Brayton, J., with a jury, at the September term of this court, 1857, the defendants offered evidence, under the general issue, tending to prove, that the note was made and delivered by them to Livingston, Wells & Co., the payees, to be held by them as collateral security for the payment of certain premium notes, made by Livingston, Wells & Co., and delivered to certain insurance companies for insurance on the steamer " El Paraguay," belonging to the Paraguay Company, an incorporated trading company, of which the de-

fendants were members, and Livingston, Wells & Co. were agents, and for no other purpose; that said Livingston, Wells & Co. had, in violation of their agreement with defendants, and whilst they were kept in funds by the Paraguay Company for all advances and liabilities made and incurred by them as agents of the company, indorsed the note in suit, before maturity, over to the plaintiffs, as collateral security for the payment of a note on demand for the sum of $10,000, made by them to the plaintiffs, to cover an overdraft of their bank account with the plaintiffs to the amount of $10,000 and upwards; the amount of which demand-note was passed by the plaintiffs to the credit of Livingston, Wells & Co. in their account with the plaintiffs, as a loan. The defendants thereupon requested the court to charge the jury, that the indorsement of the note in suit by Livingston, Wells & Co. to the plaintiffs, as collateral security for a preëxisting debt, if it was not accepted by the plaintiffs in satisfaction, discharge, or extinguishment of the previous liability, and if no security was given up, or time given, and if no other consideration intervened, was not an indorsement of the note to the plaintiffs for a valuable consideration, so as to discharge the same, in their hands, from the equities existing between Livingston, Wells & Co. and the defendants.

The court, however, refused to charge the jury as requested by the defendants, and did charge the jury, that the note in question, although indorsed over as collateral security for a preexisting debt, if received by the creditor before maturity and without notice, was indorsed to the plaintiffs for a valuable consideration, and might be held by them discharged of the equities subsisting between the original parties.

Under this instruction, the jury having rendered a verdict for the plaintiffs for the sum of $5,465.83, the amount of the note, with interest, the defendants now moved for a new trial, for misdirection in matter of law; it being agreed, as it appeared after the trial that the plaintiffs held the note as security only for a balance of account of $1,032.92 due to them, as of December 30, 1857, that the court should at all events, though they rendered judgment on the verdict, reduce the verdict to

the amount actually due from Livingston, Wells & Co. to the plaintiffs.

*T. A. Jenckes*, for the motion :—

The learned judge erred in ruling, that a note indorsed over as collateral security for a preëxisting debt might be held discharged of the equities between the original parties.

The main authorities in favor of the ruling of the court, are Judge Story, reaffirming the view of the law laid down by him in his work on Bills, in *Swift* v. *Tyson*, 16 Pet. 1, and the decisions following in the wake of that, mostly in the courts of Massachusetts. Although this view seems to have been taken by the court in *Chicopee Bank* v. *Chapin*, 8 Met. 40, yet in a subsequent decision in the same state, *Blanchard* v. *Stevens*, 3 Cush. 167, there is an evident inclination to hesitate before pronouncing such to be the law. The learned judge, in the case last cited, reviews the authorities, but refrains from deciding the point, or expressing his own views or those of the court upon it, notwithstanding the fact that it came before the court quite as legitimately as in *Swift* v. *Tyson*, if not, indeed, more directly.

That the court erred, and that this motion should be decided in favor of the defendants, there are the following authorities :—

1. The annotations to *Swift* v. *Tyson*, 1 Amer. Lead. Cas. 335, in which the following strong and decided language is used : " It seems now to be settled, that the indorsement of a note as collateral security for a preëxisting debt, if not accepted by the holder in satisfaction, discharge, or extinguishment of the previous liability, and if no security has been given up or time given, and if no other consideration intervened, is *not* an indorsement of the same for a valuable consideration, and is not discharged of the equities existing between the original parties." It is moreover to be remembered, that in the case of *Swift* v. *Tyson*, the point raised on this motion was not essential to the decision of that case, and upon that ground one of the judges dissented ; so that, although *Swift* v. *Tyson* is regarded as one of the strongest authorities against the view of the law contended for by the defendants, it is to be considered, so far, at least, as the question now before the court is

concerned, rather as the dictum of the judge pronouncing the opinion, than as a direct adjudication on a point of law. In support of the views expressed in the note quoted from 1 Amer. Lead. Cas. 335, see generally the following authorities. Byles on Bills, 28, and note. In this work the annotator, though inclining to the view that a note taken as collateral security, &c., *is* discharged of the equities, &c., is compelled to admit that the weight of the authorities is the other way. Smith's Mercantile Law, 340, and note; *Coddington* v. *Bay*, 20 Johns. 637; *Jones* v. *Swan*, 6 Wend. 585; *Hart* v. *Palmer*, 12 Wend. 523; *Manhattan Co.* v. *Reynolds*, 2 Hill, 140; and particularly, *Stalker* v. *McDonald*, 6 Ib. 93.

In the case last cited, the authorities on both sides are collected and ably reviewed, and the decision affirms the view of the law contended for by the defendants. Indeed, in New York, the course of decision has been uniform and emphatic in favor of that view. In New Hampshire, *Williams* v. *Little*, 11 N. H. 66; *Jenness* v. *Bean*, 10 Ib. 266. In Pennsylvania, *Petrie* v. *Clark*, 11 S. & R. 377; *Walker* v. *Geisse*, 4 Whart. 252; *Depean* v. *Waddington*, Ib. 220; *Kirkpatrick* v. *Muirhead*, 16 Penn. State R. 117.

In Mr. Edwards's treatise on Bills and Notes, the latest work on the subject, the point is regarded as conclusively settled in the manner laid down in the authorities above cited. The author remarks, in a note, that " a *slightly different* view is taken in *Swift* v. *Tyson*." Edwards on Bills, 321. And see further, in support of the view of the law contended for by the defendants, *Holmes* v. *Smyth*, 4 Shep. 177; *Norton* v. *Waite*, 2 Appl. 217; *Young* v. *Lee*, 18 Barb. S. C. Rep. 187; *Bertrand* v. *Barkman*, 8 Eng. 150; *Riley* v. *Anderson*, 2 McLean, 589.

The point has never received a direct adjudication in Rhode Island. On principle, and in view of the weight of authority expressed in the books and cases cited, it is submitted that the learned judge erred in his ruling.

*Tillinghast* and *Bradley*, against the motion:—

The ruling of the court at *nisi prius*, that a note transferred before maturity, and without notice, as collateral security for a preëxisting debt, was indorsed for a valuable consideration, and

might be held discharged of the equities between the original parties, was undoubtedly correct.

Whatever may have been the diversities of opinion between the courts of the different states upon this question, it being a matter resting entirely in the general principles of commercial law, from which all alike must draw their authority, it becomes, by reason of such diversities, and for want of a judicial determination thereon in our own state, a question of principle rather than precedent.

The question has been thoroughly examined and passed upon by the highest tribunal in the land, as well as by other courts whose opinions on such matters have always been entitled to respect, and has been affirmatively determined. *Swift* v. *Tyson*, 16 Pet. 1; *Chicopee Bank* v. *Chapin*, 8 Met. 40; *Stevens* v. *Blanchard*, 3 Cush. 168; *Washington Bank* v. *Lewis*, 22 Pick. 24; *Bush* v. *Scribner*, 11 Conn. 388; and it is conclusively shown, in *Swift* v. *Tyson*, that the same doctrine has uniformly obtained in England.

The case of *Coddington* v. *Bay*, by which the opposite doctrine became known, and other subsequent cases in New York, were very fully and carefully examined in *Swift* v. *Tyson*, and deliberately pronounced erroneous. See Byles on Bills, 96. *Swift* v. *Tyson* has never yet been shown to be erroneous upon principle; and apart from the investigation of the authorities, the observations of the court as to the consequences of the opposite doctrine, are, in themselves, sufficient to recommend its decision to the profession.

BOSWORTH, J.[*] The question arising in this case, is one in reference to which there has been much diversity of opinion and decision in the American courts.

The ruling at *nisi prius* to which exception is taken, was, " That a note indorsed over as collateral security for a pre-existing debt, if received by the creditor before the maturity of the collateral note, and without notice, was indorsed for valuable consideration, and might be held, discharged of the equities between the original parties."

---

[*] The chief justice did not sit in this cause.

In the consideration of the question which we have to decide, we may assume, that there is a general doctrine relating to the transfer of negotiable instruments before they become due, recognized by all the authorities, and as well settled as is any other general principal of the law ; and that is, that such instruments, taken *bonâ fide,* without notice of anything to impeach their validity, in the usual course of trade and business, and for a valuable consideration, are held unaffected by any facts that might injure or destroy their validity between antecedent parties. The note here was indorsed before its maturity, and without notice as the record implies. Nothing is suggested to impeach the *bona fides* with which it was taken by the indorseè. The questions which remain are, whether it was taken for a valuable consideration, and whether it was taken in the usual course of trade and business ?

We think it may now be considered settled, that when a negotiable instrument is taken in payment or extinguishment of a preëxisting debt, it may be held discharged of equities existing between prior parties. This doctrine, although for a time doubted, and by some of the courts in this country denied, has now become so generally accepted as to entitle us to consider it a settled point of general law. The case of *Swift* v. *Tyson* expressly decides this point; 16 Pet. R. 15–22; and the New York courts, which at one time inclined to support a contrary doctrine, by their later decisions seem tending to the same point, as an unavoidable conclusion.

The question involved in this case is, considering the weight of authority arrayed on either side of it, a more involved and doubtful question ; and yet, were the point a new one, we should have felt no difficulty in determining, that a conveyance or transfer of a negotiable instrument, as well as of any other property, as security for an existing debt, was as much in the usual course of trade and business, and as really for a valuable consideration, as would be an absolute conveyance or transfer of such an instrument in payment of such a debt. It certainly would seem, that payment of existing debts should be in the usual course of business ; and where it is inconvenient that debts shall be paid, it ought not to be out of the usual course

of business that such debts should be secured, if security be asked. The indorsing over of a note for the purpose of paying a debt, ought to be held as much for valuable consideration, as the transferring it for a new purchase ; and the indorsing over of such a note for securing a debt heretofore contracted, as for one presently incurred. It is held by the courts, with scarcely any exception, that the transferring of a note to secure payment for a present purchase, is in the usual course of business. And why is it not so when transferred to secure a debt due, and which ought to be paid or secured before new liabilities are contracted ? On the ground of importance for commercial purposes, we do not see why negotiable instruments should not have credit and currency for the payment of, and for securing debts, as well as for the purchasing of goods or the raising of cash. It is often quite as important to business men in commercial transactions, that they should be able to pay or secure their debts, and make use of current paper for these purposes, as it is that they should make new purchases, or sell such paper sometimes at ruinous sacrifices, for the purpose of raising money with which to pay their debts. The transaction which the facts show in this case is not an unusual one, and is one, which in the nature of things, it is reasonable to suppose might often occur in the convenient conduct of ordinary commercial business. The party by whom this note was indorsed was indebted to the bank, and the bank required a settlement of his account. It was not important to the bank that the money should be paid, if it could be continued on interest, and good security could be given. It was in the usual course of their business, to accommodate their customers, if, by prolonging their credit, they could loan their money anew, and be secure of ultimate payment. A new note was given, payable on demand, and this collateral note, payable on time, was pledged as security. Was not this for valid consideration, and in the usual course of business ? The proceeds of the new note were placed to the credit of the maker on the books of the bank, and thus the account, which they had required to be settled, was balanced. It cannot be contended that there was not such a

44 *

consideration here as would make the transfer of the collateral note valid between the immediate parties; and if valid between them, why does not the doctrine of credit and currency of negotiable instruments, transferred before maturity without notice, and for value, apply with its legitimate consequences to antecedent parties, as in all other cases?

It is said in some of the cases, that where one receives a note for a preëxisting debt, he parts with nothing, and is in the same situation after a successful defence by the maker, that he was before he took the note; and therefore it is argued, that in a case where a note is fraudulently put in circulation, the greater equity is in favor of the maker. But how can we say this? If the holder had not relied on the security, how do we know that he would not have insisted upon other security or upon the payment of his debt? If this note had been negotiated with another party for cash, and with that, the note had been paid, there would have been no question that the holder of the note would have been discharged of the equities of prior parties.

It is not reasonable to suppose that the party demanding a settlement of the debt, would have rested quietly had not security been given; and how can we say, that if the holders of the note had not given faith to the collateral note, they would not have found other means to obtain payment of the debt? As to the equities of the case, as between the maker and the holders of the note, it may with propriety be asked, whether it is more equitable that the party who set the note afloat, with all the marks of credit and currency upon its face, should suffer the loss consequent upon his act, or that the loss should be suffered by one who has taken it *bonâ fide* as security for a debt due, relying upon the marks of credit and currency which the maker himself has put upon it? In truth, can we decide, or ought we to determine, in a suit at law, upon these doubtful equities, in such cases, while the commercial world is doing business in the faith that there are established rules of law, giving to negotiable instruments credit and currency, when negotiated before maturity?

So far as we have been able to ascertain, from an examination of the English decisions, there is no case in which it has

been decided that current negotiable paper, taken as collateral security for a prior debt, is not taken for value, and in the usual course of business. In the case of *Poirier* v. *Morris*, 20 Law & Eq. R. 103, it seems to have been held that such a transfer is valid, according to English law. Lord Campbell, C. J., in giving the opinion in that case, says, " There is nothing to make a difference between this and the common case, where a bill is taken as security for a debt; and in that case an antecedent debt is a sufficient consideration." The American courts are quite divided upon this point. The leading case in support of the doctrine, that a note negotiated as collateral security for a precedent debt, is not taken for value, *Coddington* v. *Bay*, 20 Johns. R. 637, was an extreme case, and is such a decision as might, perhaps, be sustained without resort to the broad principle there laid down, that such a note, taken *bonâ fide* and without notice, is subject to equities existing between the original parties. There was, in that case, not only a gross fraud in the transfer of the note, but it seems to have been taken after the known insolvency of the indorser, and as collateral security for contingent liabilities with which the holders had not then become charged. Whether such circumstances might not reasonably be held sufficient to put the holder upon inquiry at the time, so as to affect the *bona fides* of his taking the note, may well be questioned. Be this as it may, it seems to have been held in New York, after that decision, that a transfer of a current note for a precedent debt, was not sufficient to shut out the equities between prior parties in favor of the holder; and in this doctrine the courts of several other states concur. The contrary doctrine is, however, maintained in the courts of Massachusetts, Connecticut, Pennsylvania, Georgia, Alabama, North Carolina, and New Jersey. Chancellor Kent, who first decided the case of *Coddington* v. *Bay*, which is affirmed in 20th of Johnson, in his Commentaries, vol. 3, p. 96, adopts the rule, recognized by these courts, as the plainer and better doctrine. The deliberate and well-considered opinion of the case of *Swift* v. *Tyson*, in the supreme court of the United States, delivered by Mr. Justice Story, upon a full consideration of the case upon principle, and after a review of all

the cases up to that time, seems to establish the point with a weight of authority too overwhelming to be resisted. It is true, as is urged by counsel, that in many of the cases the question of taking negotiable paper as collateral security was not necessarily involved in the matter for decision; the cases, as in *Swift* v. *Tyson*, presented only the question of taking such paper in payment of a precedent debt. But the courts all treat the question as if there was no difference, upon principle, between a note indorsed in payment and one indorsed for security. We think, however, that the same doctrine is maintained in a later case, in the supreme court of the United States, where the point did arise, and was to the same effect decided. *Bank of the Metropolis* v. *New England Bank*, 1 How. 234. The precise point has also been decided in several other cases.

The latest case which we have seen, in which the question has arisen, is one in the supreme court of Vermont. *Atkinson* v. *Brooks*, 26 Verm. 569. That was a case in its character exceedingly similar to the one before us. The opinion was delivered by Redfield, C. J. After giving his reasons for holding that a current note, indorsed over as collateral security for a preëxisting debt without notice, may be held by the indorsee, discharged of the equities between antecedent parties, he reviews the authorities with great ability, and comes to the conclusion, that his decision is sustained by the weight of the authority, as well as by the reason and justice of the case. After a patient examination of all the cases which we have found in which the doctrine has been brought in question, we have come to the same conclusion. The exceptions in this case are, therefore, overruled, and a new trial refused.